Gregorio PEREZ–GONZALEZ,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–73294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed Aug. 13, 2004.

Matt Adams (argued), Northwest Immigrant Rights Project, Granger, Washington, for the petitioner.

Soren M. Rottman, Northwest Immigrant Rights Project, Granger, Washington, for the petitioner.

James A. Hunolt, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Anthony P. Nicastro (argued), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before D.W. NELSON, FISHER, and GOULD, Circuit Judges.

D.W. NELSON, Senior Circuit Judge:

Gregorio Perez–Gonzalez petitions for review of the reinstatement of his prior deportation order by the Immigration and Naturalization Service ("INS").[1] He challenges the INS's interpretation of the Immigration and Nationality Act ("INA") § 241(a)(5), 8 U.S.C. § 1231(a)(5) ("the reinstatement provision"), on both statutory and constitutional grounds. We hold that the reinstatement provision is not impermissibly retroactive when applied to deportation orders that occurred before the passage of the 1996 revisions to the INA. However, we conclude that the INS did err in holding that the reinstatement provision categorically bars Perez–Gonzalez from receiving adjustment of status under INA § 245(i), 8 U.S.C. § 1255(i). We remand in order for the agency to consider whether to exercise its discretion to grant Perez–Gonzalez's application for adjust-

---

1. On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly created Department of Homeland Security ("DHS"). *See Aguilera–Ruiz v. Ashcroft,* 348 F.3d 835, 835 n. * (9th Cir.2003). Because the relevant agency actions took place before this transfer, we will refer to the agency as the INS in this opinion.

ment of status.[2]  We do not reach Perez–Gonzalez's argument that there was a due process violation in this case, because we address his injury on narrower grounds.

### I.  Factual and Procedural History

Gregorio Perez–Gonzalez was born in Tumbiscatio, Mexico in 1971.  He first entered the United States without inspection in 1992.  In October 1994, he was convicted in Ephrata, Washington, for the unlawful possession of a firearm, and was sentenced to thirty days in jail.  On November 23, 1994, an Immigration Judge ordered Perez–Gonzalez deported to Mexico, and he was deported on November 30, 1994.

In December 1995, Perez–Gonzalez returned to the United States without inspection.  He married a U.S. citizen in November 1997, and they had a daughter in 1999.  Later in 1999, Perez–Gonzalez, his wife, daughter, and in-laws traveled to Mexico, and Perez–Gonzalez returned without inspection in December 1999.

In April 2001, Perez–Gonzalez's wife filed a petition for an alien relative, in order to begin the process of attaining legal status for her husband.  The petition was approved, and in April 2002, Perez–Gonzalez filed an application to adjust his status to that of a lawful permanent resident pursuant to INA § 245(i), 8 U.S.C. § 1255(i).  In June 2002, Perez–Gonzalez had an interview for his application for adjustment of status in which he gave a sworn statement describing his previous conviction and illegal reentries.  He explained that he had not reported these past experiences in his application because the notary had not asked him these questions.  The interviewing officer informed him that his application for adjustment of status would be denied, because in his case, he was required to receive advance permission to reapply from the Attorney General.

Therefore, in July 2002, Perez–Gonzalez filed Form I–212, for permission to reapply for admission to the United States after deportation or removal.  The INS sent him a notice to appear for an interview in the local INS office on October 9, 2002.  When Perez–Gonzalez arrived at the office, with his wife, daughter, and attorney, he was immediately placed under arrest.  He was not permitted to speak with his attorney.  He was given a copy of three decisions made in his case, all dated October 9, 2002.  First, his Form I–212 application was denied on the ground that permission to reapply is only available to "aliens outside the United States, applying at a port-of-entry, or aliens paroled into the United States."  His application for adjustment of status was denied on multiple grounds.  The INS's explanation of his denial stated that he was inadmissible un-

---

**2.**  We remand to the U.S. Citizenship and Immigration Service ("USCIS"), a bureau of the DHS, which has assumed the INS's immigration service functions.  *See* DHS website, *at* http://www.dhs.gov/dhspublic/theme_home4.jsp *(last visited August 2, 2004); see also* Pub.L. No. 107–296, § 451, 116 Stat. 2135, 2195–97 (codified at 6 U.S.C.A. § 271 (West Supp.2004)).

Despite the recent creation of the DHS as a separate entity from the Department of Justice, the Attorney General continues to exercise final authority (in relation to the DHS) on all questions of law, having retained authority over the Executive Office for Immigration Review, and therefore over the Bureau of Immigration Appeals (BIA).  *See Khouzam v. Ashcroft*, 361 F.3d 161, 165 (2d Cir.2004); *see also* Pub.L. No. 107–296, § 1102, 116 Stat. 2135, 2273–74 (codified at 8 U.S.C.A. § 1103 (West Supp.2004)), *as amended by* Pub.L. No. 108–7, § 105, 117 Stat. 11, 531 (2003).  However, this case will only reach the BIA for review if Perez–Gonzalez enters into removal proceedings, for the USCIS's discretionary determination on his application for adjustment of status is not subject to appeal.  8 C.F.R. § 245.2(a)(5)(ii).

der several sub-sections of the INA,[3] that he was ineligible for a waiver under Form I–212 because he had not applied from outside the United States prior to his reentry, and that because he was subject to reinstatement under § 241(a)(5), he was not eligible to apply for any relief under the INA. Finally, he received the "Notice of Intent/Decision to Reinstate Prior Order," which stated that the INS was reinstating Perez–Gonzalez's prior 1994 deportation order pursuant to INA § 241(a)(5).

Perez–Gonzalez filed a petition for review and motion for stay of removal with this court on October 10, 2002. A temporary stay was granted the same day. On December 9, 2002, pursuant to Perez–Gonzalez's request, the temporary stay was lifted and Perez–Gonzalez was removed to Mexico.

## II. Jurisdiction and Standard of Review

This court has jurisdiction to review final orders of removal in the form of reinstatement orders under INA § 242(a), 8 U.S.C. § 1252(a). *Castro–Cortez v. INS*, 239 F.3d 1037, 1043–45 (9th Cir.2001).

Questions of fact are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Questions of statutory interpretation are reviewed de novo. *Friend v. Reno*, 172 F.3d 638, 641 (9th Cir.1999). *Chevron* deference is not applicable in this case because under *Chevron*, "a court must first analyze the law applying normal principles of statutory construction, and then defer to the agency if, after performing that analysis, it concludes that the statute is ambiguous or uncertain." *Castro–Cortez*, 239 F.3d at 1053 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As demonstrated in the discussion below, normal principles of statutory construction suffice.

Questions of constitutional law are reviewed de novo. *Padilla v. Ashcroft*, 334 F.3d 921, 923 (9th Cir.2003).

## III. Discussion

### A. Retroactivity

Perez–Gonzalez argues that the reinstatement provision is not applicable to him for two related reasons. First, he argues that the plain terms of the reinstatement provision only refer to orders of removal, not orders of deportation, and he was subject to an order of deportation only. Second, his order of deportation occurred in 1994, before the reinstatement provision was enacted, and therefore ap-

---

**3.** The denial stated that he was ineligible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible"); § 212(a)(9)(A), 8 U.S.C. § 1182(a)(9)(A)(i), ("Any alien who has been ordered removed ... and who again seeks admission within 5 years of the date of such removal ... is inadmissible"); § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B)(i), (an alien who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible."); § 212(a)(9)(C), 8 U.S.C. § 1182(a)(9)(C)(i), (any alien who "has been unlawfully present in the United States for an aggregate period of more than 1 year, or has been ordered removed ... and who enters or attempts to reenter without being admitted is inadmissible."); § 212(a)(9)(6)(C) [sic], 8 U.S.C. § 1182(a)(6)(C)(i), ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.").

plying it to his case would be impermissibly retroactive.

This argument is foreclosed by *Gallo–Alvarez v. Ashcroft*, 266 F.3d 1123 (9th Cir.2001), in which we held expressly that the reinstatement provision "applies to situations in which the predicate order of deportation was entered prior to the 1996 revisions of the immigration law." *Id.* at 1129. We held that Gallo–Alvarez could only escape the contours of the reinstatement provision "if he reentered the United States prior to April 1, 1997, or if he reentered the United States legally, in which case the provision does not apply." *Id.* (citing *Castro–Cortez*, 239 F.3d at 1050). Here, it is uncontested that Perez–Gonzalez had a prior deportation order entered before the law changed, and he reentered the United States illegally after April 1, 1997. Therefore, *Gallo–Alvarez* squarely controls and Perez–Gonzalez is subject to the reinstatement provision.

We find further support for this conclusion in *Avila–Macias v. Ashcroft*, 328 F.3d 108 (3d Cir.2003), in which the Third Circuit rejected the same retroactivity argument. The Third Circuit's reasoning regarding the non-retroactivity of the terms of the reinstatement provision enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") applies to this case with equal force: "Applying IIRIRA to [Perez–Gonzalez]—an alien who was deported prior to its effective date, but who reentered afterwards—does not have an impermissible retroactive effect because the consequences of an illegal reentry at the time that he reentered are the consequences he faces now." *Id.* at 114. Accordingly, Perez–Gonzalez's retroactivity argument fails.

## B. The Reinstatement Provision and Adjustment of Status

Perez–Gonzalez also argues that the INS erred by barring review of his application for adjustment of status on the ground that he is ineligible for adjustment of status due to the reinstatement provision. He argues that the reinstatement provision should not bar his application because he applied for adjustment of status prior to the initiation of reinstatement proceedings, and he filed an application for consent to reapply under 8 C.F.R. § 212.2(e).

The INS based its denial of his application for adjustment of status in part on the section of the reinstatement provision stating that a person subject to reinstatement of a prior order of removal "is not eligible and may not apply for any relief under this chapter." INA § 241(a)(5), 8 U.S.C. § 1231(a)(5).[4]

Perez–Gonzalez argues that despite this language, he was entitled to apply for adjustment of status under INA § 245(i), which allows undocumented persons who

---

**4.** The INS's denial of Perez–Gonzalez's application for adjustment of status was not included as part of the Certified Administrative Record. Perez–Gonzalez submitted the INS's determination in a supplement to the Certified Administrative Record. The government objects to this additional evidence, arguing that under INA § 242(a)(4)(A), 8 U.S.C. § 1252(a)(4)(A), the court must base its decision on the administrative record alone. However, INA § 242 refers to judicial review of orders of removal. Here, we are not reviewing an order of removal, but rather the INS's statutory interpretation of the reinstatement provision, in order to determine whether it erred in barring Perez–Gonzalez's application for adjustment of status based on its interpretation of the reinstatement provision. *See Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1141 (9th Cir.2002) (holding that this court has jurisdiction to review non-discretionary matters of statutory interpretation by the BIA). This is an issue separate from his order of removal, and therefore, we do not violate the statute by reviewing the supplemental record in addressing this issue.

entered the country without inspection to apply for adjustment to lawful permanent status. The provision was passed in 1994, then amended and extended twice, first in 1997 and then in 2000, by the Legal Immigration and Family Equity (LIFE) Act, Pub.L. No. 106–554, 114 Stat. 2763, 2763A–324 (2000).

The government contends that Perez–Gonzalez's argument is foreclosed by *Padilla v. Ashcroft,* 334 F.3d 921 (9th Cir. 2003). In *Padilla,* we held that a plaintiff who was removed in 1997, and then reentered and applied for adjustment of status in 2001, was barred from seeking adjustment of status by the reinstatement provision. *Padilla* held that the issue was controlled by the reinstatement provision's bar to relief, and this bar simply could not be harmonized with the terms of INA § 245(i). *See id.* at 925.

■ However, Perez–Gonzalez's case is distinguishable because, unlike Padilla, he applied for a discretionary waiver to reapply for reentry pursuant to 8 C.F.R. § 212.2(e) before his prior deportation order was reinstated.[5] He argues that his application for the waiver was wrongly denied, and that a successful application would have cured any inadmissibility grounds premised on his prior deportation or subsequent illegal reentry.

We agree that a successful waiver under 8 C.F.R. § 212.2(e) would offer a means of avoiding the reinstatement provision's bar. Given the fact that Perez–Gonzalez applied for the waiver *before* his deportation order was reinstated, he was not yet subject to its terms and, therefore, was not barred from applying for relief. *See Padilla,* 334 F.3d at 926–27 (Berzon, J., concurring) ("A

request for permission to reapply for entry ... might have cured Padilla's inadmissibility premised on her illegal reentry, but no such request was ever filed with the district director.") (internal citation omitted); *see also Hernandez v. Reno,* 86 F.Supp.2d 1037, 1041 (W.D.Wash.1999). Had the INS exercised its discretion in Perez–Gonzalez's favor, he would no longer be subject to the reinstatement provision as he would no longer be considered an illegal entrant.

Therefore, in order to proceed, we must consider the basis upon which Perez–Gonzalez's application for permission to reapply pursuant to 8 C.F.R. § 212.2(e) was denied. If, as Perez–Gonzalez claims, it was denied on the basis of a legal error, we may then proceed to consider whether the error was prejudicial—in other words, whether a successful Form I–212 waiver would have made him eligible for adjustment of status.

### 1. Form I–212 Permission to Reapply

■ Ordinarily, we lack jurisdiction to review the INS's discretionary determination of whether to grant a Form I–212 waiver to an applicant for adjustment of status under INA § 245. INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i). However, in this instance, the INS asserted a purely legal, rather than discretionary, basis for denying Perez–Gonzalez's Form I–212 waiver. The INS justified its denial of Perez–Gonzalez's application on the basis that the waiver is only available "to aliens outside the United States, applying at a port-of-entry, or aliens paroled into the United States." Whether or not aliens are eligible

---

**5.** 8 C.F.R. § 212.2(e) states in part: "An applicant for adjustment of status under section 245 of the Act and part 245 of this chapter must request permission to reapply for entry in conjunction with his or her application for adjustment of status. This request is made by filing an application for permission to reapply, Form I–212, with the district director having jurisdiction over the place where the alien resides."

to apply for the waiver from within this country is a purely legal matter over which we retain jurisdiction. *See Montero–Martinez,* 277 F.3d at 1141 (holding that the court retains jurisdiction to review purely legal and hence non-discretionary questions of statutory interpretation); *see also Dillingham v. INS,* 267 F.3d 996, 1003 (9th Cir.2001) (distinguishing, under IIRI-RA's transitional rules, discretionary determinations on adjustment of status—over which the court would not have jurisdiction—from legal conclusions regarding statutory ineligibility).

We find that the INS committed legal error when it concluded that Perez–Gonzalez could not apply for a Form I–212 waiver from within this country. Unlike *Montero–Martinez* and *Dillingham,* the INS's determination here was not a matter of statutory interpretation but rather interpretation of the agency's own regulations. The INS's claim that the waiver is only available to aliens outside the country is directly counter to the text of its own regulations, which explicitly states that consent to reapply for readmission after deportation or removal is available to aliens within the United States who are seeking adjustment of status under INA § 245. *See* 8 C.F.R. § 212.2(e) (stating that the application for permission to reapply must be filed with "the district director having jurisdiction over the place where the alien *resides*") (emphasis added). The regulations further state that, "If the applicant is physically present in the United States but is ineligible to apply for adjustment of status, he or she must file the application with the district director having jurisdiction over his or her place of residence." 8 C.F.R. § 212.2(g)(2). In addition, "If the alien filed Form I–212 in conjunction with an application for adjustment of status under section 245 of the Act, the approval of Form I–212 *shall be*

*retroactive* to the date on which the alien embarked or reembarked at a place outside the United States." 8 C.F.R. § 212.2(i)(2) (emphasis added). These provisions of the regulations clearly contemplate applications for the waiver from aliens who are currently living within this country illegally.

"[W]hile we ordinarily defer to an agency's interpretation of its own regulations, we need not accord any deference to an unreasonable construction that does not conform with the wording and purpose of the regulation." *Public Citizen Inc. v. Mineta,* 343 F.3d 1159, 1166 (9th Cir.2003). "We have thus refused to defer to an agency construction that is clearly contrary to the plain and sensible meaning of the regulation. What is clear in this case is that the interpretation of the INS is contrary to the plain language of the regulation...." *Ruangswang v. INS,* 591 F.2d 39, 43 (9th Cir.1978) (internal citations and quotation marks omitted).

Prior administrative decisions of the Board of Immigration Appeals confirm the fact that permission to reapply is available on a *nunc pro tunc* basis, in which the petitioner receives permission to reapply for admission after he or she has already reentered the country. *See, e.g., In re Felipe Garcia–Linares,* 21 I. & N. Dec. 254, 257 (BIA 1996) ("Immigration Judges and this Board have long considered such requests for [*nunc pro tunc* permission to reapply]. However, the instances in which such relief could be granted have been limited to those in which the grant would effect a complete disposition of the case, i.e., where the only ground of deportability or inadmissibility would thereby be eliminated or where the alien would receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility.") (internal citations and quotations omitted); *Matter of*

*Roman,* 19 I. & N. Dec. 855, 859 (BIA 1988) ("Two situations have been identified in which that power [to grant permission retroactively] may be exercised: (1) where the only ground of deportability or inadmissibility would thereby be eliminated; and (2) where the alien would receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility.").

Given the plain language of the regulations and the agency's own administrative precedent, the INS's denial of Perez–Gonzalez's application on the ground that he had to apply from outside the country was a legal error that we have jurisdiction to review. *See Montero–Martinez,* 277 F.3d at 1141; *see also Hernandez v. Ashcroft,* 345 F.3d 824, 846 (9th Cir.2003) ("A nonprecedential decision by the BIA in defiance of its own precedential case law simply cannot be classified as discretionary.").

Prior to remanding for a discretionary determination of whether to grant Perez–Gonzalez's request for a waiver on proper legal grounds, we must first consider whether the INS's error was prejudicial. In other words, we must consider whether, had the INS not barred his application on improper legal grounds, he would have been eligible for *nunc pro tunc* relief. In order to merit such relief, Perez–Gonzalez must demonstrate that the grant of the waiver would have made him eligible "to receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility." *Matter of Roman,* 19 I. & N. Dec. at 859. If Perez–Gonzalez can demonstrate that the grant of retroactive permission to reapply could have been combined with appropri-

ate waivers of inadmissibility to make him eligible for adjustment of status, then we should remand for a discretionary determination of whether or not to grant the Form I–212 waiver.[6]

## 2. Availability of Adjustment of Status to Illegal Reentrants

In its denial of his application for adjustment of status, the INS listed several grounds of inadmissibility: INA §§ 212(a)(6)(A) and (C), and 212(a)(9)(A), (B), and (C). We will take them in turn, considering whether they would be cured by the Form I–212 waiver, and if not, whether they would bar adjustment of status.

### a. INA § 212(a)(6)(A): Alien Present Without Admission or Parole

■ The INS stated that Perez–Gonzalez was inadmissible as an alien present without admission or parole under INA § 212(a)(6)(A)(i). However, § 245(i) clearly contemplates that some aliens who have entered the country without legal admission can receive adjustment of status. This provision states that aliens who are physically present in the United States after entering without inspection, who are the beneficiaries of a petition filed before April 30, 2001, and who pay a $1,000 fee, may apply for adjustment of status. INA § 245(i)(1), 8 U.S.C. § 1255(i)(1). The Attorney General may grant the adjustment of status if,

> (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and

---

**6.** The factors to be considered in determining whether to grant permission to reapply include the basis for the prior deportation; recency of deportation; length of residence in the United States; applicant's moral character; respect for law and order; evidence of reformation and rehabilitation; family responsibilities; any inadmissibility under other sections of law; hardship involved to applicant or others; and the need for the applicant's services in the United States. *See Matter of Tin,* 14 I. & N. Dec. 371 (1973).

(B) an immigrant visa is immediately available to the alien at the time the application is filed.

INA § 245(i)(2), 8 U.S.C. § 1255(i)(2). We have previously stated that this section "provides an exception to [the] general rule" that aliens who entered the country without inspection are ineligible to seek adjustment to lawful permanent status. *Chan v. Reno,* 113 F.3d 1068, 1071 (9th Cir.1997).

For our purposes, the key issue is that an alien must be otherwise admissible in order to adjust status under § 245(i)(2)(A). Admissibility is defined by INA § 212, 8 U.S.C. § 1182, and several of the inadmissibility grounds involve the lack of entry documents. In particular, § 212(a)(6)(A) bars admission to aliens present without admission or parole.

However, it is illogical to conclude that § 245(i) awarded illegal entrants the right to apply for adjustment of status, but then made it statutorily impossible for the Attorney General to grant it to them because they would never be considered admissible under the provisions of INA § 212. *See Henrique v. United States Marshal,* 653 F.2d 1317, 1320 (9th Cir.1981) ("While much can be said for assuming that Congress meant unequivocally what it said, it is unwarranted to stretch an inflexible interpretation beyond the realm of reason.") (internal quotation marks omitted).

The INS itself has recognized the contradiction created by the statutory terms in INA §§ 212(a)(6)(A) and 245(i). In a legal opinion issued by the INS's Office of General Counsel on February 19, 1997, the agency found that § 212(a)(6)(A) did not create a statutory bar to adjustment of status, stating that,

Based on our review of the relevant legislative history of section 245(i), it is our opinion that Congress's goals in enacting section 245(i) of the Act would not be achieved were the Service to deem entrants without inspection inadmissible when they otherwise qualify for adjustment of status under section 245(i) of the Act.

Gen. Couns. Mem. (Feb. 19, 1997), "Request for Legal Opinion: The Impact of the 1996 Act on Section 245(i) of the Act," *quoted in* 74 No. 11 Interpreter Releases 499, 501, *INS General Counsel Issues Important Opinion on EWI Eligibility for Adjustment,* March 24, 1997. The legal opinion reached this result by focusing on the "savings clause" to § 212(a), which precedes the list of classes of inadmissible aliens by stating that the following classes are inadmissible *"[e]xcept as otherwise provided in this chapter."* INA § 212(a), 8 U.S.C. § 1182(a) (emphasis added). This INS legal opinion suggests that § 212(a)(6)(A) does not bar illegal entrants from receiving adjustment of status as a matter of law.

The INS confirmed the applicability of this interpretation in a guidance memorandum issued to all field directors and officers by the INS Associate Commissioner. *See* Memorandum by Louis D. Crocetti, Jr., INS Assoc. Comm'r (May 1, 1997), *reprinted in* 2 Bender's Immigration Bulletin 450, 452 (June 1, 1997) ("this new ground of inadmissibility[§ 212(a)(6)(A)] does not disqualify aliens present in the United States without admission or parole from adjustment of status under section 245(i) of the Act"); *see also Immigration Law and Procedure,* Vol. 4, § 51.01[2][b], 51–15 n. 41 (§ 212(a)(6)(A) "is trumped by a § 245(i) filing where it is permissible").

Thus, § 212(a)(6)(A) is not a ground of inadmissibility that would categorically bar Perez–Gonzalez's application for adjustment of status.

b. *INA § 212(a)(6)(C): Misrepresentation*

█ The INS stated that Perez–Gonzalez was inadmissible under this section due

to the fact that he did not reveal his previous conviction on his application form for adjustment of status. The INS noted, however, that he testified under oath that the notary who helped him complete the paperwork did not ask him about it. It further noted that Perez–Gonzalez could apply for a waiver under INA § 212(i), 8 U.S.C. § 1182(i).[7]

The availability of this discretionary waiver to illegal entrants, on the basis of a showing of extreme hardship, demonstrates that this ground of inadmissibility would not categorically bar Perez–Gonzalez from adjusting status. The BIA has made clear that *nunc pro tunc* relief is available in conjunction with other appropriate discretionary waivers so long as the other waivers are not dependent on the decision to grant *nunc pro tunc* permission to reapply. *See In re Sosa–Hernandez*, 20 I. & N. Dec. 758, 762–63 (BIA 1993). For example, in *In re Garcia–Linares*, 21 I. & N. Dec. 254, 257 (BIA 1996), the petitioner sought retroactive permission to reapply in conjunction with § 212(c) relief. But § 212(c) relief was only available if Garcia–Linares was considered a lawful entrant. The BIA denied relief, holding that the petitioner could not "bootstrap" his claims by seeking retroactive permission to reap-

ply in order to cure multiple grounds of inadmissibility at once. *See id.* at 259.

In contrast to the § 212(c) relief sought in *Garcia–Linares*, § 212(i) relief is available to Perez–Gonzalez regardless of whether he is considered a lawful entrant. If he independently received favorable determinations on both the § 212(i) waiver and Form I–212 permission to reapply, he would be eligible for adjustment of status. Accordingly, this ground of inadmissibility does not categorically bar Perez–Gonzalez from receiving adjustment of status.

c. *INA § 212(a)(9): Aliens Previously Removed*

The INS stated that Perez–Gonzalez was inadmissible under subsections (A), (B), and (C) of § 212(a)(9) as an alien previously removed. Unlike its determinations with regard to inadmissibility under §§ 212(a)(6)(A) and (C), this ground of inadmissibility finds support in agency guidance. In the same guidance memorandum that instructed that inadmissibility under § 212(a)(6)(A) does not disqualify aliens from seeking adjustment of status, the INS Associate Commissioner wrote that aliens subject to § 212(a)(9)(B) and (C) of the Act "will be deemed inadmissible under that section of the Act for purposes of adjustment of status...."[8] Memoran-

---

**7.** This provision states in part: "The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien."

**8.** Unlike the extensive discussion in the agency's legal opinion that preceded the guidance memorandum's conclusion regarding

§ 212(a)(6)(A), the Court is not aware of any such analysis of the interplay between § 212(a)(9) and § 245(i). The guidance memorandum devotes one brief paragraph to the issue and notes at the conclusion, "The Service will be issuing further guidance regarding the impact of amended section 212(a)(9)(C) of the Act on section 245 of the Act in the near future." However, the additional guidance provided in the following guidance memorandum, issued on June 17, 1997, addresses timing issues that do not further clarify the agency's reasoning as to why § 212(a)(9) is a categorical bar to adjustment of status. *See* Memorandum by Paul Virtue, Acting Executive Assoc. Comm'r (June 17, 1997), *reprinted in* 74 No. 25 Interpreter Re-

dum by Louis D. Crocetti, Jr., INS Assoc. Comm'r (May 1, 1997), *reprinted in* 2 Bender's Immigration Bulletin 450, 453 (June 1, 1997).

■ Agency interpretations contained in informal formats such as guidance memoranda are only entitled to "some deference," as opposed to the rigorous deference owed formal agency interpretations under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The guidance memoranda are "entitled to respect . . . but only to the extent that those interpretations have the power to persuade." *Id.* (internal citation and quotation marks omitted). Regulations, in contrast, are a form of agency interpretation that is due *Chevron* deference. *Id.*

■ In this case, in light of the text and purposes of the statute and its implementing regulations, we are unpersuaded by the agency's interpretation in the guidance memorandum. The statutory terms of INA § 245(i) clearly extend adjustment of status to aliens living in this country without legal status. This provision of the statute was originally enacted in 1994 in order to allow individuals who would qualify for adjustment of status but for their unlawful immigration status to apply for adjustment from within this country, rather than forcing them to undertake the time, cost, and risk of leaving the country in order to apply. The amendment was extended in 1997 and again in 2000, in order to allow "spouses, children, parents and siblings of permanent residents or U.S. citizens [to] be able to adjust their status in the U.S. and avoid needless separation from their loved ones." *See* Joint

Memorandum, Statement of Senator Kennedy, 146 Cong. Rec. S11850–52 (daily ed. Dec. 15, 2000). Nothing in the statutory provisions regarding adjustment of status, nor in the discussion of its purposes, suggests that aliens who have been previously deported or removed are barred from this form of relief.

The regulations at 8 C.F.R. § 212.2 make the availability of adjustment of status to previously removed aliens explicit. 8 C.F.R. §§ 212.2(e) and (i)(2) expressly permit applicants for adjustment of status who have been previously removed or deported to apply for permission to reapply from within this country. In addition, another section of the regulations prescribes classes of aliens who are ineligible for adjustment, and no mention is made of previously deported or removed aliens. *See* 8 C.F.R. § 245.1(c).

It is noteworthy that these regulatory provisions were not modified to bar adjustment of status by previously removed aliens, even after the passage of INA § 212(a)(9) and § 241(a)(5). *See In re G–N–C*, 22 I. & N. Dec. 281 (BIA 1998) (Lory D. Rosenberg, concurring in part and dissenting in part) (rejected on other grounds by *Castro–Cortez*, 239 F.3d 1037) ("Although section 245(i) was amended after the enactment of section 241(a)(5) of the Act, Congress did not modify it—nor was 8 C.F.R. § 212.2(e) modified—to preclude adjustment in cases of reentry after deportation.").

We find it impossible to reconcile the interpretation of the statute in 8 C.F.R. § 212.2, which indicates that illegal reentrants can seek adjustment of status, with the interpretation in the agency's informal guidance memorandum, which states that they are categorically barred from receiv-

leases 1033. In addition, the Court is not aware of any materials in which the agency discusses the import of the regulations at 8 C.F.R. § 212.2.

ing adjustment of status. 8 C.F.R. § 212.2 is entitled "Consent to reapply for admission after deportation, removal or departure at Government expense." As previously discussed, subsections 212.2(e) and (i)(2) explicitly instruct applicants for adjustment of status who fall under the terms of this regulation to apply for permission to reapply from within this country. At the same time, § 212(a)(9)(C) states that all aliens who have entered this country illegally after being previously removed are inadmissible.[9] *See* § 212(a)(9)(C) ("Any alien who ... has been ordered removed ... and who enters or attempts to reenter the United States without being admitted is inadmissible.").[10] Thus, the aliens to whom § 212.2(e) and (i)(2) apply are also subject to the inadmissibility grounds of § 212(a)(9)(C). If the guidance memorandum is read in conjunction with the regulations, the latter become nonsensical, because they instruct illegal reentrants eligible for adjustment of status to apply for consent to reapply, despite the fact that it would be futile for them to do so, since they would be categorically barred from receiving adjustment of status due to their inadmissibility.

We decline to read the regulations in such an illogical manner. *See Public Citizen Inc. v. Mineta*, 343 F.3d at 1166. In the absence of a more complete agency elaboration of how its interpretation of § 212(a)(9) can be reconciled with its own regulations, we must defer to the regulations rather than to the informal guidance memorandum. *See Christensen*, 529 U.S. at 587, 120 S.Ct. 1655. The most natural reading of the regulations is that, if permission to reapply is granted, the approval of Form I–212 is retroactive to the date on which the alien entered the country, and therefore, the alien is no longer subject to the grounds of inadmissibility in § 212(a)(9). *See* 8 C.F.R. § 212.2(i)(2). We find this interpretation also conforms with the most natural reading of the statute, in which § 245(i) permits illegal aliens, including those previously removed, who can demonstrate the requisite family ties and pay the requisite fee, to apply for adjustment of status.

We note that the majority in *Padilla* observed that in the same 2000 amendments that extended the application period for LIFE Act relief, Congress expressly granted further protections to aliens applying for adjustment of status under the Nicaraguan Adjustment and Central American Relief Act (NACARA) and the Haitian Refugee Immigration Fairness Act (HRIFA). Specifically, § 1505 of the LIFE Act provides that for these aliens:

---

**9.** Although § 212(a)(9) outlines three separate categories of inadmissibility, (A), (B), and (C), we focus solely on (C) because it has the most stringent provisions, and the aliens covered by the regulations at 8 C.F.R. § 212.2 would all be covered by (C). These aliens may have been subject to inadmissibility under (A) or (B) as well, prior to crossing the border. But by definition, the class of aliens covered by 8 C.F.R. § 212.2 have crossed the border and are currently living in the country without lawful status, thereby making them subject to (C). Therefore, (A) and (B) will not be separately discussed.

**10.** This provision is subject to two exceptions. *See* INA § 212(a)(9)(C)(ii), 8 U.S.C. § 1182(a)(9)(C)(ii). First, aliens who receive consent to reapply prior to reembarkation more than ten years after their last departure are not inadmissible. *Id.* This exception does not alter our analysis because it would not cover the class of aliens under 8 C.F.R. § 212.2, who have been previously removed and are currently in this country *prior* to seeking permission to reapply.

Second, inadmissibility under § 212(a)(9)(C) may be waived in certain cases of battery or extreme cruelty. *Id.* This does not alter our analysis, either, since the broad language of the regulations cannot reasonably be read to refer to such a narrow and specific subset of aliens.

(A) the provisions of section 241(a)(5) of the Immigration and Nationality Act shall not apply; and

(B) the Attorney General may grant the alien a waiver on the grounds of inadmissibility under subparagraphs (A) and (C) of section 212(a)(9).

P.L. No. 106–554 § 1505, 114 Stat. 2763, 2763A–326 (Dec. 21, 2000).

The majority found these provisions indicative of Congress's intent *not* to exempt other classes of aliens from the reinstatement provision's bar. We do not think this impacts our analysis, however, given the fact that we are addressing the availability of adjustment of status once a favorable determination of permission to reapply has been made. Once an alien receives such a waiver—and the discussion above highlights the numerous scenarios in which such discretionary relief would be available—the alien is no longer subject to the reinstatement provision and therefore Congress would not have needed to create a special exemption.

Furthermore, the waiver of inadmissibility under §§ 212(a)(9)(A) and (C) is a special protection afforded to these groups, but certainly should not be interpreted as an indication that other classes of aliens are not entitled to other forms of discretionary relief. Aliens under NACARA and HRIFA need not apply for permission to reapply under § 212.2(e), because their inadmissibility on these grounds can be waived without undertaking the lengthy and challenging discretionary determination afforded to applicants for *nunc pro tunc* relief. The fact that this additional benefit is available to them does not mean that other aliens may not overcome inadmissibility under § 212(a)(9) through other statutory and regulatory means of relief.

The special protection regarding the reinstatement provision, § 241(a)(5), in the LIFE Act indicates that Congress had a particular interest in protecting certain classes of aliens—those applying under NACARA and HRIFA—from adverse action occurring as a result of their decision to apply for adjustment of status. We must acknowledge that no such protection is accorded to other illegal reentrants. For these illegal aliens, the decision to apply for discretionary relief is a risky proposition, for there is nothing to prevent the INS from initiating reinstatement proceedings upon receiving their application.

However, if the alien has applied for permission to reapply in the context of an application to adjust status, the INS is required to consider whether to exercise its discretion in the alien's favor before it can proceed with reinstatement proceedings. For aliens who meet the terms of the waivers and exceptions discussed above, the government may exercise its discretion in their favor, thereby granting adjustment of status and foreclosing the possibility of reinstatement proceedings.

### 3.  *Conclusion*

The INS legally erred by denying Perez–Gonzalez's application for adjustment of status on the ground that it was barred by the reinstatement provision, because he had applied for permission to reapply before his prior deportation order was reinstated. Furthermore, the INS legally erred when it denied his application for permission to reapply on grounds that run counter to the clear terms of the regulations and its own administrative precedent.

The statutory framework clearly contemplates certain circumstances in which aliens who have been previously removed may still receive a favorable determination on their application for adjustment of status. The statutory provisions in § 241(a)(5), § 245(i), and § 212(a) should be read to harmonize with one another,

rather than allowing § 241(a)(5) to render the other provisions totally or partially meaningless. *See Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife,* 273 F.3d 1229, 1241 (9th Cir.2001) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole.") (internal citations and quotation marks omitted).

Accordingly, because we find that Perez–Gonzalez meets the requirements for receiving *nunc pro tunc* permission to reapply, we remand to the USCIS for a discretionary determination on appropriate legal grounds. If the agency chooses to exercise its discretion in his favor on both the Form I–212 and § 212(i) relief, he will be eligible for adjustment of status.

## C. Due Process and the Reinstatement Provision

Perez–Gonzalez argues that the regulations implementing the reinstatement provision violated his due process rights. He alleges that he was called to the local INS office for what he thought was an interview regarding his application for adjustment of status, and yet when he arrived he was immediately arrested, notified of the reinstatement of his prior deportation order, and prevented from consulting with his attorney. The use of the adjustment of status procedure to surprise applicants with sudden reinstatement of their deportation orders raises fundamental due process concerns. *See, e.g., Castro–Cortez,* 239 F.3d at 1041; *Chacon–Corral v. Weber,* 259 F.Supp.2d 1151, 1164–65 (D.Colo. 2003). However, the harm to Perez–Gonzalez—the denial of his right to a discretionary determination on his permission to

reapply—can be addressed on narrower grounds than due process. *See Jean v. Nelson,* 472 U.S. 846, 854–55, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) ("Because the current statutes and regulations provide petitioners with … all they seek to obtain by virtue of their constitutional argument—there [is] no need to address the constitutional issue."). Accordingly, we remand the case for a discretionary determination of whether Perez–Gonzalez is entitled to advance permission to reapply pursuant to 8 C.F.R. § 212.2(e). Reinstatement proceedings may not be initiated until the USCIS has independently reviewed whether to grant the discretionary waiver.

**REMANDED.**