In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-1078

FRANCISCA LINO,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
Reinstating a Prior Removal Order.

ARGUED SEPTEMBER 28, 2006—DECIDED NOVEMBER 6, 2006

Before FLAUM, *Chief Judge,* and RIPPLE and EVANS,
*Circuit Judges.*

FLAUM, *Chief Judge.* In 1999, Immigrations and Customs
Enforcement ("ICE") caught Francisca Lino attempting to
enter the United States with forged documents and issued
her a removal order. Shortly thereafter, Lino illegally
reentered the United States. She married an American
citizen and had three daughters, who are American citizens
as well.

In 2001, Lino applied to adjust her status under Immigra-
tion and Nationality Act ("INA") § 245(i) to become a lawful
resident of the United States. At her interview with United
States Citizenship and Immigration Services ("CIS")

officials, Lino truthfully answered questions about her prior removal in 1999. ICE officials took Lino into custody, and CIS denied her application for adjustment of status because she received a removal order and later entered the United States illegally. ICE officials also reinstated Lino's prior removal order under INA § 241(a)(5). Lino appeals the reinstatement of her removal order and the denial of her adjustment of status application. For the following reasons, we deny Lino's petition.

## I. BACKGROUND

Francisca Lino is a native and citizen of Mexico. On July 26, 1999, Lino attempted to enter the United States at El Paso, Texas claiming to be Francisca Burciaga-Amaro. The border patrol found her removable and issued an expedited removal order. On September 1, 1999, Lino illegally reentered the United States near El Paso, Texas. She has been in the United States since that time. On April 13, 2001, she married her husband, Diego Lino, a naturalized United States citizen. Together, they have three daughters who are all United States citizens. The younger daughters are twins with severe developmental problems due to their premature birth. Lino currently resides with her husband and three children in Woodridge, Illinois.

On April 24, 2001, Lino's husband filed an I-130 family-based petition to have Lino classified as an alien relative of a lawful permanent resident. CIS approved the I-130 petition on January 6, 2004. Thereafter, Lino filed an adjustment of status application under INA § 245(i), which allows certain classes of illegal aliens, including those who are spouses of United States citizens, to petition to change their status to lawful permanent resident. CIS scheduled Lino's interview for January 5, 2005.

At the interview, Lino answered questions about her 1999 removal order. She stated under oath that she reentered the

country in September or October 1999. CIS ended the interview after learning of Lino's removal order. ICE officials took Lino into custody and detained her at the McHenry County Jail to await removal to Mexico.

On January 8, 2005, CIS denied Lino's application to adjust her status and reinstated her 1999 removal order pursuant to INA § 241(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

On January 13, 2005, Lino filed a petition for review challenging the reinstated order of removal.

## II. DISCUSSION

Lino argues that the INA allows her to apply for adjustment of status despite the reinstatement of her removal order. Lino's challenges involve pure questions of law and are subject to a de novo standard of review. *Marquez v. INS*, 105 F.3d 374, 378 (7th Cir. 1997).

At issue in this case is the intersection of two provisions of the INA, § 245(i) and § 241(a)(5). Section 245(i) permits illegal entrants with close family ties to lawful residents or United States citizens to adjust their status to permanent resident without leaving the United States. However, to be eligible for adjustment, the alien must be admissible and eligible to receive an immigrant visa that is immediately available. Congress initially passed § 245(i) in October 1994 and twice extended it in 1997 and 2000.

The final extension required applicants to file their petitions by April 30, 2001.

In September 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), dramatically changing the stakes for immigration violators seeking permanent residency. Congress first created a summary removal procedure, by which aliens who seek admission to the United States by fraud or misrepresentation, or who lack the proper documents to enter the United States, can be deported at the border by an immigration officer, without the right to a hearing or review. 8 U.S.C. § 1225(b)(1)(A)(I). Second, IIRIRA included § 241(a)(5), the reinstatement provision, which provides that any alien who reenters the country illegally after being removed can have his or her removal order reinstated, without any review of the order itself or any other relief under the INA. 8 U.S.C. § 1231(a)(5) (1997).

While the facts of this case are compelling, § 241(a)(5) plainly precludes a previously removed alien who has since illegally reentered the United States from adjusting her status under § 245(i). Our decision in *Labojewski v. Gonzales*, 407 F.3d 814 (7th Cir. 2005), is instructive. In *Labojewski*, the petitioner, a citizen of Poland, entered the United States on a visitor's visa in 1987. He overstayed the visa and was deported in 1990. He illegally reentered the United States in 1992 or 1993 using a false passport and visa. In 1994, his mother, a lawful permanent resident, filed an I-130 petition on his behalf, and in 2001, the petitioner applied for adjustment of status under § 245(i). ICE discovered that the petitioner had reentered the United States after being removed, and reinstated his removal orders under § 241(a)(5). The petitioner argued that because he had illegally reentered the United States before Congress passed § 241(a)(5), it should not apply retroactively to him. *Id.* at 816-18.

We disagreed and held that § 241(a)(5) retroactively applies to aliens who illegally reentered the United States prior to IIRIRA's effective date but applied for adjustment of status after that date. *Id.* at 823. We upheld ICE's determination that the petitioner was statutorily barred, under § 241(a)(5), from adjusting his immigrant status under § 245(i). *Id.* The only difference between the *Labojewski* petitioner's argument and Lino's argument is that Lino does not make a retroactive application challenge. That difference has no bearing on § 241(a)(5)'s effect on Lino's adjustment of status application, and, thus, there is no sound basis for departing from our decision in *Labojewski*.

In further support of our conclusion, Lino does not fall into any Congressionally recognized exemption from § 241(a)(5). In 2000, Congress specifically exempted certain aliens applying for adjustment of status from § 241(a)(5). *See* Pub. L. No. 106-554, App. D § 1505. The amendments revised section 202 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") and section 902(a) of the Haitian Refugee Immigration Fairness Act ("HRIFA"). The House report accompanying those amendments states that their intended effect was "to permit Nicaraguans, Cubans, and Haitians eligible for adjustment of status . . . to receive this relief despite having been previously removed under an order of removal . . . ." H.R. Rep. No.106-1048, at 231 (2001). These limited exemptions for NACARA and HRIFA eligible aliens strongly undermine Lino's argument that Congress intended to exempt every alien who seeks to adjust his or her status under § 245(i) after illegally reentering the United States following removal. Where Congress intended § 241(a)(5) not to pose a barrier to adjustment of status for aliens who illegally reentered the United States, it made a special exception to the general rule. Because Lino does not fall within the exception, she is bound by the general rule disqualifying

aliens who illegally reentered the country from seeking adjustment of status.

Finally, six circuits have held that § 241(a)(5) precludes aliens subject to reinstatement orders from obtaining adjustment of status pursuant to § 245(i). *See De Sandoval v. U.S. Attorney Gen.*, 440 F.3d 1276, 1284-85 (11th Cir. 2006); *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1163 (10th Cir. 2004) (holding that once a petitioner's prior removal order has been reinstated, he no longer qualifies for any relief under the INA, regardless of whether his application was filed before or after the reinstatement decision was made); *Lattab v. Ashcroft*, 384 F.3d 8, 21 (1st Cir. 2004) (holding that "[s]ection 241(a)(5) . . . bars aliens who have illegally reentered the United States after having previously been deported from applying for relief"); *Warner v. Ashcroft*, 381 F.3d 534, 540 (6th Cir. 2004) (holding that aliens whose prior orders of removal are reinstated under § 241(a)(5) should not be eligible for relief under § 245(i) because § 241(a)(5) states that aliens who fall under this provision "may not apply for any relief under this chapter"); *Flores v. Ashcroft*, 354 F.3d 727, 731 (8th Cir. 2003); *Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003) (holding that an alien who illegally reenters this country is not eligible for adjustment of status because the reinstatement provision controls).

Lino acknowledges these cases but does not attempt to distinguish them. Rather, she claims that these decisions oversimplify the problem and that the two provisions should be read to give each its due. However, both provisions are given their due. Section 241(a)(5) merely precludes a subset of aliens from taking advantage of § 245(i). "There are many aliens illegally present in the United States who have never been deported, and nothing in [§] 241(a)(5) prevents them from seeking adjustments of status under [§] 245(i)." *Lattab*, 384 F.3d at 21.

Lino cites *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), to support her argument; however, that case is distinguishable. In *Perez-Gonzalez*, the court held that an alien who has applied for an I-212 waiver *before* his deportation order is reinstated is not barred from applying for relief under § 245(i). I-212 forms permit a previously-removed alien to apply for permission to reapply for admission to the United States. The court held that if an alien's I-212 application is granted, he is no longer subject to the reinstatement provision, because he is no longer an illegal entrant. *Id.* at 789. Here, Lino did not apply for a I-212 application. Consequently, her reliance on *Perez-Gonzalez* is misplaced. In any event, courts have questioned the *Perez-Gonzalez* outcome. *See, e.g.*, *Lattab*, 384 F.3d at 17 ("[W]e have grave doubts about the correctness of the *Perez-Gonzalez* court's conclusion.").

Although we recognize the unfortunate circumstances of this case, we have consistently held that "immigration policy . . . is traditionally [within] the province of the political branches." *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002); *see also Sivaainkaran v. INS*, 972 F.2d 161, 165 (7th Cir. 1992) (recognizing that "immigration policy is the clear purview of the legislative branch"); *Urukov v. INS*, 55 F.3d 222, 228 (7th Cir. 1995) (same). For this reason, § 241(a)(5) precludes Lino from seeking relief by adjusting her status under § 245(i).

## III.  Conclusion

For the above stated reasons, we DENY Lino's petition for review.

A true Copy:

       Teste:

                    _____

                    *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*