RICE, District Judge,,
dissenting:
I respectfully dissent. On balance, the Montgomery Ward factors do not weigh in favor of departing from the general principles of retroactivity. Applying In re Briones, 24 I. & N. Dec. 355 (BIA 2007), the BIA properly found Acosta-Olivarria *1278 inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) and thus ineligible for adjustment of status under 8 U.S.C. § 1255(0.
As an initial matter, it is important to recognize “[t]he general rule ... that an appellate court must apply the law in effect at the time it renders its decision.” Thorpe v. Hous. Auth. of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); see also id. at 282, 89 S.Ct. 518 (quoting Justice Marshall’s explanation of the rule, delivered 150 years earlier in United States v. Schooner Peggy, 5 U.S. 103, 110, 1 Cranch 103, 2 L.Ed. 49 (1801)). This rule “applies with equal force where the change is made by an administrative agency acting pursuant to legislative authorization.” Id. at 282, 89 S.Ct. 518. Only when application of a new rule would work a “manifest injustice” may the court withhold retrospective application. Clark-Cowlitz Joint Operating Agency v. FERC, 826 F.2d 1074, 1081 (D.C.Cir.1987) (en banc) (quoting Thorpe, 393 U.S. at 282, 89 S.Ct. 518).
The D.C. Circuit’s Retail, Wholesale & Department Store Union v. NLRB, 466 F.2d 380 (D.C.Cir.1972) decision, from which the Ninth Circuit adopted its Montgomery Ward analytical framework, “set forth a non-exhaustive list of five factors to assist courts in determining whether to grant an exception to the general rule permitting ‘retroactive’ application of a rule enunciated in an agency adjudication.” Clark-Cowlitz, 826 F.2d at 1081 (emphasis added). Once again, that exception, according to the Supreme Court, is for “manifest injustice.” Thorpe, 393 U.S. at 282, 89 S.Ct. 518. This non-exhaustive list of factors “boil[s] down ... to a question of concerns grounded in notions of equity and fairness,” Clark-Cowlitz, 826 F.2d at 1082 n. 6, such that the general rule of retroactivity would apply unless its application would result in manifest injustice.
I contend the majority’s balancing of the Montgomery Ward factors here is no longer tethered to the general rule applied for over 200 years. Rather, the majority’s analysis — in which the factors are divorced from the general rule and allowed to become a framework in and of itself — loses sight of the guidance centuries of jurisprudence have offered. With this background, I will analyze the factors.
I agree with the majority’s analysis of the first, fourth, and fifth Montgomery Ward factors. The first factor — whether the issue presents one of first impression — does not weigh in favor of either party as it is one “not ... well suited to the context of immigration law.” See Garfias-Rodriguez v. Holder, 702 F.3d 504, 521 (9th Cir.2012). In any event, any question of unfairness in applying a new rule, regardless of whether it is a case of first impression, “is fully captured in the second and third Montgomery Ward factors.” Id. Similarly, I concede that the fourth factor-the degree of burden on the alien-favors Acosta-Olivarria, albeit not as strongly as the majority and past precedent so characterize.[1] See id. at 523. Finally, I agree that the fifth factor “points in favor” of the government. See id. “[N]on-retroactivity impairs the uniformity of a statutory scheme, and the importance of uniformity in immigration law is well established.” Id.
*1279 I seriously depart from the majority, however, on the application of the second and third Montgomery Ward factors. I contend these factors weigh strongly in favor of retroactively applying Briones: Because Briones was not an abrupt departure from any “well established practice,” any reliance Acosta-Olivarria may have had on the Ninth Circuit’s reasoning in Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir.2004), or Acosta v. Gonzales, 439 F.3d 550 (9th Cir.2006), cannot be considered reasonable. To the contrary, the BIA’s decision in Briones should have come as no surprise in light of the BIA’s previous rejection of the Circuit’s interpretation of the statutory scheme, which rejection it announced in In re Torres-Garcia, 23 I. & N. Dec. 866 (BIA 2006), prior to Acosta-Olivarria’s July 2006 application.
The second and third Montgomery Ward factors are most appropriately analyzed together. The second factor analyzes whether a rule is an “abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law.” Garfias-Rodriguez, 702 F.3d at 518 (quoting Montgomery Ward & Co. Inc. v. FTC, 691 F.2d 1322, 1333 (9th Cir.1982)). The third factor, focusing on the alien’s reliance, is “closely intertwined” with this analysis: “If a new rule represents an abrupt departure from well established practice, a party’s reliance on the prior rule is likely to be reasonable, whereas if the rule merely attempts to fill a void in an unsettled area of law, reliance is less likely to be reasonable.” Id. at 521 (internal quotation marks omitted). As the Garfias-Rodriguez court properly noted, “these two factors will favor retroactivity if a party could reasonably have anticipated the change in the law such that the new requirement would not be a complete surprise.” Id. (internal quotation marks omitted); see Clark-Cowlitz, 826 F.2d at 1082-83 (“The second factor requires the court to gauge the unexpectedness of a rule and the extent to which the new principle serves the important but workaday function of filling in the interstices of the law.”). The D.C. Circuit offers the following guidance to courts conducting this analysis:
From our experience in applying the [retroactivity analysis], there has emerged a basic distinction between (1) new applications of law, clarifications, and additions, and (2) substitution of new law for old law that was reasonably clear. In the latter situation, which may give rise to questions of fairness, it may be necessary to deny retroactive effect to a rule announced in an agency adjudication in order to protect the settled expectations of those who had relied on the preexisting rule. By contrast, retro-activity in the former case is natural, normal, and necessary, a corollary of an agency’s authority to develop policy through case-by-case adjudication rather than rulemaking.
Williams Nat. Gas Co. v. FERC, 3 F.3d 1544, 1554 (D.C.Cir.1993) (alterations, citations, and internal quotation marks omitted).
Importantly — and contrary to the majority’s protestations — the retroactivity analysis does not treat mere precedent and well-established practice alike.
When Acosta-Olivarria applied for adjustment of status, there was no settled practice upon which he could reasonably rely. The Ninth Circuit’s pre-Briones opinions hardly constitute a well established practice, especially in light of the tension created by the BIA’s contrary view. True, the Circuit’s opinion in Acosta affirmed its previous reasoning in Perez-Gonzalez, but the BIA’s decision in Torres-Garcia cannot be discounted. Given the unsettled tension between the BIA and this Circuit at the time of Acosta-Olivarria’s application, as well as the resulting *1280 confusion from the two unreconcilable decisions,[2] Briones cannot be called an abrupt break from any well established practice. See Local 900, Int’l Union of Elec., Radio & Mach. Workers v. NLRB, 727 F.2d 1184, 1195 (D.C.Cir.1984) (“Given the confusion in the Board’s and courts’ decisions over the years, the new rule cannot be called an abrupt break with a well-settled policy.”). As such, Acosta-Olivarria’s reliance on contrary Ninth Circuit decisions was not reasonable.
The majority primarily faults me for conflating the two bars to admissibility. True, the Circuit’s opinion in Perez-Gonzalez and the BIA’s contrary decision in Torres-Garcia addressed the tension between eligibility for status adjustment under a different bar to admissibility — subsection II, rather than subsection I of 8 U.S.C. § 1182(a)(9)(C)(i). However, as companion provisions, both subsections present the same conflict, see Garfias-Rodriguez, 702 F.3d at 509 n. 4, and thus their similar treatment should have come as no surprise, see id. at 530 (Kozinski, J., dissenting) (“No one should have been surprised by the interpretation announced in Briones. It was clearly foreshadowed by the BIA’s earlier ruling in In re Torres-Garcia, which predated Acosta by a month....” (citation omitted)). And as the Circuit emphasized in Acosta when concluding that Perez-Gonzalez controlled, “any attempt to distinguish the present case from Perez-Gonzalez based on the different grounds of inadmissability involved would be unpersuasive.” Acosta, 439 F.3d at 554.
In reaching its conclusion that AcostaOlivarria’s reliance was reasonable, the majority overstates the effect of the dicta in Garfias-Rodríguez regarding the reasonableness of reliance during the 21-month period between the Circuit’s opinion in Acosta and the BIA’s decision in Briones. Although the en banc court noted that reliance during this period “might” have been reasonable — perhaps in an attempt to further highlight the unreasonableness of Garfias-Rodriguez’s reliance— the opinion far from binds this Court to a holding that such reliance during this 21-month window is, as a blanket rule, reasonable. See Garfias-Rodriguez, 702 F.3d at 522. Rather, any discussion of the reasonableness of reliance during this period was quickly tempered by the following:
From the outset, the tension between § 212(a)(9)(c) and § 245(i) was obvious. That ambiguity in the law — which resulted in a six-year dialogue between the BIA and us — should have given Garfias no assurances of his eligibility for adjustment of status. Garfias might have had reason to be encouraged after our generous reading of the statute in Perez-Gonzalez and Acosta, but, even then, any reliance he placed on our decisions held some risk because our decisions were subject to revision by the BIA under Chevron and Brand X.
Id. at 522-23; see also Carrillo de Palacios v. Holder, 708 F.3d 1066, 1072 (9th Cir.2013) (similarly holding that the tension between the two provisions was “obvious” and that the ambiguity in the law should have given an alien “no assurances”).
Because the BIA’s opinion in Briones cannot justifiably be characterized as an abrupt break from any well established practice but rather should have been no surprise, the reasonableness of Acosta-Olivarria’s reliance is greatly diminished. The extent of Acosta-Olivarria’s reliance— a $1,000 application fee incurred after removal proceedings had already commenced and years beneficially spent in the United *1281 States when he hypothetically could have voluntarily departed and started the ten-year readmission clock under 8 U.S.C. § 1182(a)(9)(C)(ii) — is insufficient to outweigh this conclusion.
In light of the foregoing, no manifest injustice has been shown here. The more equitable and fair approach would be to treat Aeosta-Olivarria like all other aliens who are ineligible for adjustment under Briones. Retroactivity is the general rule and has been for over 200 years. An exception is not warranted in the case of Aeosta-Olivarria. Accordingly, I would not disturb the BIA’s decision.

. The Immigration Judge, under the old rule, had granted Acosta-Olivarria’s application for adjustment of status and thus allowed him to remain in the United States with his family; conversely, upholding the BIA's retroactive application of Briones would cause him to face certain deportation. But deportation has always been the consequence at the heart of Acosta-Olivarria’s proceedings. Our system of justice does not allow an initial wrong decision to dictate the final result, especially when that decision is subject to timely review by a higher authority, as was the case here.

. The Acosta court did not distinguish — let alone mention — the BIA’s decision in Torres-Garcia, which had been issued one month before Acosta.