[967 NYS2d 371]

MONICA PATRICIA TENESACA DELGADO et al., Appellants, v BRETZ & COVEN, LLP, et al., Respondents.

First Department, June 20, 2013

APPEARANCES OF COUNSEL

*Jarret A. Kahn,* Elmsford, for appellants.

*Abrams, Gorelick, Friedman & Jacobson, LLP,* New York City (*Barry Jacobs* and *Shari Sckolnick* of counsel), for respondents.

**OPINION OF THE COURT**

Manzanet-Daniels, J.

In this case we determine whether plaintiff has sufficiently alleged that defendants' legal advice concerning the consequences of applying for an adjustment of immigration status constitutes malpractice, and whether she has sufficiently alleged that such misguided advice was the but-for cause of her ultimately being taken into custody and deported.

Plaintiff is a native of Ecuador. On May 5, 1999, she first attempted to enter the United States at Houston International Airport by falsely presenting herself as a returning resident alien, using a visa belonging to her cousin, who has the same surname. Plaintiff was removed and returned to Ecuador, but in December 2000, reentered the United States without inspection by crossing the Mexican border. As an alien previously ordered removed who thereafter entered the United States without permission, plaintiff was deemed "inadmissible" pursuant to Immigration and Nationality Act (INA) § 212 (a) (9) (C) (i) (II) (8 USC § 1182 [a] [9] [C] [i] [II]), and, by statute, could not apply for readmission until 10 years had passed from the date of her last departure from the United States (INA § 212 (a) (9) (C) (ii) [8 USC § 1182 (a) (9) (C) (ii)]).

On January 8, 2006, plaintiff married a United States citizen, Jarret Kahn. On February 23, 2006, plaintiff retained defendant Bretz & Coven, LLP to represent her before the United States Citizenship and Immigration Service (CIS) in order to obtain legal residency in the United States. Plaintiff alleges that defendant Kerry Bretz, a partner at the firm, determined that she

could apply for adjustment of status without leaving the United States, based on a Ninth Circuit precedent, *Perez-Gonzalez v Ashcroft* (379 F3d 783, 788-789 [9th Cir 2004]).

On July 11, 2006, the firm filed several immigration forms with CIS, including a Form I-485 petition for adjustment of status to lawful permanent resident, Form I-212 for permission to reapply after deportation or removal, and a Form I-130 petition for classification of an alien as an immediate relative of a United States citizen.

On October 26, 2006, plaintiff and her husband appeared with defendants for an interview at CIS, which denied her requests on the I-485 and I-212 forms that same day. CIS found her ineligible for adjustment of her status because she had entered the United States without permission after having been removed. CIS found that plaintiff did not qualify for a waiver of inadmissibility, as set forth in section 212 (a) (9) (C) (ii) because 10 years had not yet passed from the date of her last departure from the United States, and she did not seek permission for readmission before she reentered in December 2000.

Plaintiff was arrested on the same day by immigration authorities, who reinstated her expedited removal order of May 5, 1999. They released her from detention the same day pursuant to an agreement reached with her lawyers, but the reinstatement order remained in effect.

Defendant Matthew L. Guadagno, a partner at Bretz & Coven, orally argued plaintiff's petition before the Second Circuit. The petition for review relied on *Perez-Gonzalez*, which had already been rejected by seven sister circuits and abrogated by the Board of Immigration Appeals (BIA) in *In re Torres-Garcia* (23 Immigr & Natlity Dec 866, 873-876 [BIA 2006]).

On November 7, 2007, the Ninth Circuit overruled *Perez-Gonzalez*, announcing that it was bound by the BIA's decision in *Torres-Garcia* (*see Gonzales v Department of Homeland Sec.*, 508 F3d 1227, 1242 [9th Cir 2007]).

On January 12, 2008, plaintiff terminated the services of Bretz & Coven and retained her husband, Kahn, as her attorney. On February 7, 2008, the Second Circuit denied plaintiff's petition for review and upheld the reinstatement of the May 5, 1999 deportation order, citing *Torres-Garcia* and deferring to the BIA's interpretation of immigration statutes (*Delgado v Mukasey*, 516 F3d 65, 73 [2d Cir 2008], *cert denied* 555 US 887 [2008], citing *Chevron, U.S.A., Inc. v Natural Resources Defense*

*Council, Inc.*, 467 US 837, 842-843 [1984]). The court observed that *Perez-Gonzalez*, relied upon by defendants, had been overruled by *Gonzales* (*id.*)

Plaintiff commenced this action on December 14, 2010, asserting claims for legal malpractice, breach of contract and breach of fiduciary duty.[1] Plaintiff alleges that Bretz was "dishonest and deceitful with Plaintiff[ ] to [her] detriment in an effort to create legal fees." Plaintiff alleges that defendants encouraged her to apply for adjustment of status "as soon as possible," "without informing her of numerous material issues," including the fact that she was deemed inadmissible under INA § 212 (a) (9) (C) (i) (II), and the likelihood of reinstatement of the prior removal order. Defendants allegedly informed plaintiff that if she applied for adjustment of status in 2006, "there was no risk of her being deported much less detained." Defendants failed to give plaintiff "a realistic assessment of the consequences of any action." Plaintiff alleges that Bretz failed to advise her that if she were going to pursue such a "risky" application, she ought to have waited until 10 years had passed from the date of her last departure from the United States, in light of the statutory language and the relevant law.

With respect to the Second Circuit appeal, plaintiff alleges that the firm ignored "BIA [and] Second Circuit law," and that Guadagno "showed up at oral argument unprepared."

Defendants moved to dismiss the complaint in its entirety pursuant to CPLR 3211 (a) (1), (5) and/or (7), and moved to disqualify Kahn from representing Delgado in this matter pursuant to the advocate-witness rule.

The court granted the motion to dismiss the legal malpractice claim, noting that the retainer agreements "clearly identify the difficulty of [plaintiff's] position and warn of a 'harsh' legal environment" (2011 NY Slip Op 33687[U], *9 [2011]). The court further reasoned that given the passage of "time and intervening events" from the time she retained defendants, in February 2006, to her ultimate deportation in May 2010, more than four years later, defendants' actions in soliciting her business could not be deemed the "but for" cause of her deportation (*id.*).

The court rejected plaintiff's arguments concerning the quality of defendants' representation during the appellate process, noting that the Second Circuit's opinion was "rife with citations to statutes, immigration rules and regulations, and federal case

---

1. Plaintiff subsequently withdrew her breach of contract claim.

law from various jurisdictions" and thus, was not entirely contingent on the contents of defendants' brief (*id*. at *10). The court found that plaintiff had failed to establish that she would have succeeded on the appeal but for defendants' negligence, noting that her deportation to Ecuador was consistent with prevailing law.

The court dismissed the breach of fiduciary duty claim as duplicative of the legal malpractice claim. Finally, the court granted defendants' motion to disqualify Kahn pursuant to the advocate-witness rule, reasoning that his testimony would be critical in presenting plaintiff's case.

■ We now modify to reinstate plaintiff's claim for legal malpractice against defendant law firm and Bretz. The claim against defendant Guadagno was properly dismissed. Inasmuch as the well-reasoned and thorough Second Circuit opinion was not contingent on defendant Guadagno's argument or briefing, it was not a but-for cause of plaintiff's deportation.

■ We disagree with the motion court's conclusion that due to intervening events, defendant law firm and Bretz's malpractice was not a "but for" cause of plaintiff's removal from the United States. Plaintiff was unambiguously ineligible for relief under prevailing case law when defendants submitted her application to immigration authorities. Once her application was submitted and denied and the removal order reinstated, any efforts by Kahn, whom plaintiff had retained to represent her after terminating defendants' services, were too late to remedy the situation. By that point, the only intervening event sufficient to break the causal chain would have been a change in the relevant immigration law. The passage of four years between plaintiff's consultation with defendants and her removal did not disrupt the chain of causation.

When defendants submitted plaintiff's application, the government had already publicly announced that it would not grant relief to those in her position in light of the BIA's decision in *In re Torres-Garcia* (*see e.g.* CIS Interoffice Mem, Mar. 31, 2006, at 2, available at http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2006/perezgonz033106.pdf [attached to the complaint] [stating that in light of *Torres-Garcia*, "in any case where an alien is inadmissible under section 212(a)(9)(C)(i) of the INA and 10 years have not elapsed since the date of the alien's last departure from the United States, USCIS should deny any Form I-212 requesting consent to reapply for admission"]). However,

instead of advising plaintiff concerning the clear implications of the BIA's ruling in *Torres-Garcia*—to which the Ninth Circuit owed deference under *Chevron USA*—defendants assured plaintiff "she would not be deported much less detained" if she applied.

■ Given plaintiff's allegations that she had no chance of obtaining immigration relief and that defendants failed to thoroughly discuss the possibility, if not certainty, of reinstatement of the order of deportation and removal upon submission of the application, plaintiff has sufficiently alleged that defendants followed an unreasonable course of action in pursuing the application (*see Phoenix Erectors, LLC v Fogarty*, 90 AD3d 468, 469 [1st Dept 2011]). Moreover, she has sufficiently alleged proximate cause, because the submission of the application alerted authorities to her status, which led to the issuance of the reinstatement order and ultimately to her removal (*see Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442 [2007]; *Phoenix Erectors*, 90 AD3d at 469). Plaintiff's unlawful status alone did not trigger her removal, since she had resided in the United States, albeit unlawfully, for more than six years; she was removed only after defendants affirmatively alerted immigration authorities to her presence. The record does not indicate on this motion pursuant to CPLR 3211 that plaintiff would have otherwise come to the attention of the immigration authorities. Without discovery on the issue, it cannot yet be said, as defendants assert, that plaintiff would have been deported regardless of defendants' malpractice. Indeed, had plaintiff waited four more years she would have been eligible to apply for reinstatement under INA § 212 (a) (9) (C) (ii), which provides that an alien in plaintiff's position can apply for admission if more than 10 years have passed from the date of the alien's last departure from the United States.

Defendants rely on the fact that *Perez-Gonzalez v Ashcroft* had not yet been overruled at the time they submitted plaintiff's application for reinstatement and argued the appeal.

However, *Perez-Gonzalez* was an anomalous case, the reasoning of which was swiftly rejected. Notwithstanding the explicit language in INA § 241 (a) (5) (8 USC § 1231 [a] [5][2]) which

2.  Section 241 (a) (5) (8 USC § 1231 [a] [5]) provides that
    "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order

provides that a person subject to reinstatement of a prior order of removal "is not eligible and may not apply for *any* relief under [the INA]" (emphasis added), the Ninth Circuit held that an alien in plaintiff's position may adjust his or her status under INA § 245 (i) (8 USC § 1255 [i]) (*Perez-Gonzalez* at 784). The Ninth Circuit relied in large part on the implementing regulations of the *prior* version of the statute, which—as the BIA later explained in *Torres-Garcia*—had clearly been supplanted by the repeal of those statutory provisions.

Indeed, every other circuit confronting the issue has ruled that aliens whose prior orders of removal are reinstated pursuant to section 241 (a) (5) (8 USC § 1231 [a] [5]) are ineligible for relief under section 1255 (i), relying on the plain wording of section 1231 (a) (5) that aliens in plaintiff's position are "ineligible for any relief" under the INA, including reinstatement.

The First Circuit, in *Lattab v Ashcroft* (384 F3d 8 [1st Cir 2004]) expressed "grave doubts" about the correctness of the holding in *Perez-Gonzalez*, noting "permission to reenter, like adjustment of status, is relief under the INA, which section 241(a)(5) precludes an illegal reentrant from seeking" (*id.* at 17).

In *Berrum-Garcia v Comfort* (390 F3d 1158 [10th Cir 2004]), the Tenth Circuit declined to follow *Perez-Gonzalez*, concluding "[p]etitioner may not seek adjustment of status under § 1255(i) because § 1231(a)(5) bars illegally reentering aliens from 'any relief' under the INA. . . . Congress did not consider those who reenter the United States in defiance of a prior deportation order to be qualified for § 1255(i)'s amnesty" (*id.* at 1164-1165, 1167-1168).

The Fifth, Sixth, Seventh, Eighth and Eleventh Circuits similarly held that section 1231 (a) (5) bars illegal reentrants from seeking an adjustment of status under section 1255 (i) (*see Warner v Ashcroft*, 381 F3d 534, 539-540 [6th Cir 2004] [rejecting the argument that section 1255 (i) conflicts with and supersedes section 1231 (a) (5), and ruling that aliens whose prior orders of removal are reinstated under section 1231 (a) (5) are not eligible for relief under section 1255 (i)]; *De Sandoval v United States Atty. Gen.*, 440 F3d 1276, 1285 [11th Cir 2006] ["(t)he fact that § 1231(a)(5) prohibits a subset of aliens from

---

of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this [Act], and the alien shall be removed under the prior order at any time after the reentry."

applying for adjustment of status under § 1255(i) does not create a conflict between § 1231(a)(5) and § 1255(i)"]; *Mortera-Cruz v Gonzales,* 409 F3d 246 [5th Cir 2005], *cert denied* 546 US 1031 [2005] [BIA had not acted arbitrarily in ruling that the petitioner, who was inadmissible under section 1182 (a) (9) (C) (i) (I), was ineligible to adjust his status under section 1255 (i)]; *Gomez-Chavez v Perryman,* 308 F3d 796, 801-803 [7th Cir 2002], *cert denied* 540 US 811 [2003] [adjustment of status application does not affect alien's removal pursuant to reinstatement statute]; *Flores v Ashcroft,* 354 F3d 727, 730-731 [8th Cir 2003] [section 1231 (a) (5) controls over section 1255 (i)]).

On January 26, 2006, the BIA resoundingly rejected the holding of *Perez-Gonzalez,* finding that the Ninth Circuit's analysis "contradict[ed] the language and purpose of the [INA]," and "appears to have proceeded from an understandable, but ultimately incorrect, assumption regarding the applicability of 8 C.F.R. § 212.2 [the implementing regulation for statutory provisions under an earlier version of the Act]," which "does not correspond to any provision of the current section," and "cannot reasonably be construed as implementing the provision for consent to reapply" (*Torres-Garcia* at 873, 874, 875).

The BIA unequivocally ruled that an alien who had reentered the United States without permission after having been previously removed is ineligible for an adjustment of status, and cannot apply for admission until more than 10 years after the date of the alien's last departure from the United States (*id.* at 873-876; INA § 212 [a] [9] [C] [ii]). The BIA observed that "Congress has given the Attorney General no authority to grant an alien a waiver of the section 212(a)(9)(C)(i) ground of inadmissibility . . . prior to the end of this 10-year period" (*id.* at 875). The petitioner in *Torres-Garcia,* like plaintiff, was taken into custody during his adjustment of status interview and charged with being removable as an alien present in the United States without having been admitted or paroled.

The BIA concluded:

> "8 C.F.R. § 212.2 does not purport to implement section 212(a)(9)(C)(ii) of the Act. Even if the regulation were applicable, however, we could not interpret it in a manner that would allow an alien to circumvent the statutory 10-year limitation on section 212(a)(9)(C)(ii) waivers by simply reentering unlawfully before requesting the waiver. After all, it is the alien's unlawful reentry without admission that

makes section 212(a)(9)(C)(i) applicable in the first place. In effect, *Perez-Gonzalez* allows an alien to obtain a section 212(a)(9)(C)(ii) waiver nunc pro tunc even though such a waiver would have been unavailable to him had he sought it prospectively, thereby placing him in a better position by asking forgiveness than he would have been in had he asked permission. Such an interpretation contradicts the clear language of section 212(a)(9)(C)(ii) and the legislative policy underlying section 212(a)(9)(C) generally. We find that the more reasonable interpretation of the statutory framework . . . is that an alien may not obtain a waiver of the section 212(a)(9)(C)(i) ground of inadmissibility, retroactively or prospectively, without regard to the 10-year limitation set forth at section 212(a)(9)(C)(ii)" (*id.* at 876).

The BIA, and every circuit confronting the issue having resoundingly rejected the legal underpinnings of *Perez-Gonzalez*, allegations that defendants advised plaintiff that she would "not be deported much less detained" if she applied for reinstatement, and that they encouraged her to apply for an adjustment of status, sufficiently state a cause of action for negligence. Moreover, plaintiff has sufficiently alleged that defendants' actions were the but-for cause of her being taken into custody and deported.

█ We agree, however, that the breach of fiduciary duty cause of action is redundant of the legal malpractice cause of action, and should be dismissed on that basis (*Garnett v Fox, Horan & Camerini, LLP*, 82 AD3d 435, 436 [1st Dept 2011]).

█ The court properly granted the motion to disqualify Kahn based on the advocate-witness rule. The allegations in the complaint reveal that Kahn was closely involved with the immigration petition on behalf of his wife, and it is likely that he will be a witness on a significant issue of fact on plaintiff's behalf (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7).

Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J.), entered October 17, 2011, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the complaint and to disqualify Jarret Kahn as plaintiff's counsel, should be modified, on the law, to reinstate the legal malpractice cause of action as to de-

fendant Bretz and defendant law firm, and otherwise affirmed, without costs.

TOM, J.P., MOSKOWITZ, RICHTER and CLARK, JJ., concur.

Order, Supreme Court, New York County, entered October 17, 2011, modified, on the law, to reinstate the legal malpractice cause of action as to defendants Bretz & Coven, LLP and Kerry William Bretz, and otherwise affirmed, without costs.