**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GILBERTO ACOSTA-OLIVARRIA,
*Petitioner*,

v.

LORETTA E. LYNCH, Attorney
General,
*Respondent*.

No. 10-70902

Agency No.
A079-657-188

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 8, 2015—Pasadena, California

Filed August 26, 2015

Before: Carlos T. Bea and Michelle T. Friedland, Circuit
Judges and Thomas O. Rice,* District Judge.

Opinion by Judge Friedland
Dissent by Judge Rice

---

* The Honorable Thomas O. Rice, United States District Judge for the
Eastern District of Washington, sitting by designation.

# SUMMARY[**]

## Immigration

The panel granted Gilberto Acosta-Olivarria's petition for review of the Board of Immigration Appeals' decision denying adjustment of status pursuant to its published opinion *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007), which held that adjustment under 8 U.S.C. § 1255(i) was not available to an alien who was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I).

The panel held that petitioner reasonably relied on this circuit's law in effect at the time he applied for adjustment, *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), under which he could apply for adjustment despite being inadmissible, because he was eligible for a visa. Petitioner applied within the 21-month period between *Acosta*, later overruled by this court's decision in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), and the BIA's opinion in *Briones*, which directly disagreed with *Acosta*. The panel noted that during the relevant period the BIA's decision in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), which held that inadmissible noncitizens could not obtain adjustment, was in tension with *Acosta*, but did not directly disagree with it.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Applying the *Montgomery Ward* retroactivity analysis, the panel held that the BIA's decision in *Briones* should not apply retroactively to bar petitioner's application. Weighing all factors, the panel held that petitioner's reliance interests and the burden retroactivity would impose on him outweighed the interest in uniform application of the immigration laws.

Dissenting, Judge Rice would find that the *Montgomery Ward* factors do not weigh in favor of departing from general retroactivity principles, and would hold that the BIA properly found petitioner inadmissible and ineligible for adjustment of status.

## COUNSEL

Gary Finn (argued), Law Office of Gary Finn, Indio, California, for Petitioner.

Yedidya Cohen (argued), Margot L. Carter, and Allison Frayer, Trial Attorneys, Benjamin C. Mizer, Acting Assistant Attorney General, Tony West, Assistant Attorney General, Leslie McKay, Assistant Director, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for Respondent.

## OPINION

FRIEDLAND, Circuit Judge:

In *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), we reserved the question whether a noncitizen applying for adjustment of immigration status could reasonably rely on an opinion of this court during a period in which the Board of Immigration Appeals ("BIA") had issued a decision that was in tension with our opinion but before the BIA issued a decision directly disagreeing with our opinion. *See id.* at 522. We now answer that question with respect to Petitioner Acosta-Olivarria and hold that he reasonably relied on the law of this circuit when he applied for adjustment of status during that period.

## I. Facts

Gilberto Acosta-Olivarria, a native and citizen of Mexico, entered the United States in 1995 and took up residence in Arizona with his wife and child. His wife is a lawful permanent resident and two of his now-three children are United States citizens.

Between 1995 and 2005, Acosta-Olivarria made multiple trips to and from Mexico. During that period, he was unlawfully present in the United States for a total of over one year, and he reentered the country without being admitted at least once. In 2006, he was arrested for illegal entry and was placed in removal proceedings.

While in removal proceedings, Acosta-Olivarria applied for adjustment of status pursuant to 8 U.S.C. § 1255(i) and paid the required $1,000 fee. At the time, our precedent had interpreted § 1255(i) as allowing individuals who had been unlawfully present in the United States for more than a year, but who were eligible for a visa, to apply for an adjustment of status to become lawful permanent residents.

*See Acosta v. Gonzales*, 439 F.3d 550, 556 (9th Cir. 2006), *overruled by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc).  Acosta-Olivarria was eligible for a visa because of a petition that his wife had filed based on her permanent-resident status.

In December 2006, an immigration judge ("IJ") considered Acosta-Olivarria's application.  Although Acosta-Olivarria was "inadmissible" because he had been unlawfully present in the United States for more than one year and reentered without being admitted, 8 U.S.C. § 1182(a)(9)(C)(i)(I), the IJ held that he was nonetheless eligible for adjustment of status.  In doing so, the IJ relied on our court's decision in *Acosta*, which allowed noncitizens to seek relief under § 1255(i) despite being inadmissible under § 1182(a)(9)(C)(i)(I).[1]  *See Acosta*, 439 F.3d at 556.  Because his status as inadmissible did not bar his application, the IJ went on to consider the merits of the application and granted discretionary relief.

The Department of Homeland Security appealed the IJ's decision.  Before the BIA ruled on the appeal, a BIA panel issued a published opinion, *In re Briones*, 24 I. & N. Dec. 355 (B.I.A. 2007), in which it held that an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) is not eligible for adjustment of status under § 1255(i).  *See Briones*, 24 I. & N. Dec. at 371.  Based on *Briones*, the BIA remanded Acosta-Olivarria's case to the IJ for further proceedings.

---

[1] Title 8 U.S.C. § 1182(a)(9)(C)(i) is the codification of the Immigration and Nationality Act ("INA") § 212(a)(9)(C)(i).  Title 8 U.S.C. § 1255(i) is the codification of INA § 245(i).

On remand, the IJ applied *Briones* and denied Acosta-Olivarria's application for adjustment of status. Acosta-Olivarria appealed that decision, but the BIA agreed that *Briones* controlled. Acosta-Olivarria timely filed a petition for review of the BIA's decision.

## II. Legal Background

**Tension between 8 U.S.C. § 1255(i) and 8 U.S.C. § 1182(a)(9)(C)(i)[2]**

In 1994, Congress created a path to legal status for noncitizens who had entered the United States without inspection but were nonetheless eligible for a visa. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-317, § 506(b), 108 Stat. 1724, 1765–66 (1994) (codified as amended at 8 U.S.C. § 1255(i)). To qualify for this type of relief, noncitizens must be "admissible" for permanent residence. § 1255(i)(2)(A).

When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), it created new categories of noncitizens who were inadmissible. *See* IIRIRA, Pub. L. No. 104-208, Div. C., § 302(b)(1), 110 Stat. 3009-546, 3009-576 to -578. Section 1182(a)(9)(C)(i)(I)—which we will refer to as the "one-year bar"—makes noncitizens inadmissible if they have been "unlawfully present in the United States for an aggregate period of more than 1 year." Section 1182(a)(9)(C)(i)(II)—which we will refer to as the

---

[2] A fuller summary of this legal background is provided in *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 509-12 (9th Cir. 2012) (en banc).

"removal-order bar"—makes noncitizens inadmissible if they have been ordered removed from the United States. Congress did not specify what should happen when noncitizens who are inadmissible under either provision apply for adjustment of status under § 1255(i).

**The Ninth Circuit and the BIA Weigh In**

In *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), *overruled by Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227 (9th Cir. 2007), we held that noncitizens could apply for adjustment of status despite being inadmissible under the removal-order bar. *Id.* at 792–95. We held that interpreting inadmissibility under that provision as a bar to adjustment of status would conflict with certain regulations implementing the Immigration and Nationality Act and lead to illogical results. *See id.* at 793–94.

The BIA disagreed. In a published opinion, *In re Torres-Garcia*, 23 I. & N. Dec. 866 (B.I.A. 2006), the BIA rejected *Perez-Gonzalez*'s interpretation of the regulations. *See Torres-Garcia*, 23 I. & N. Dec. at 874–75. Accordingly, it held that inadmissibility under the removal-order bar precluded noncitizens from obtaining adjustment of status under § 1255(i). *See Torres-Garcia*, 23 I. & N. Dec. at 870, 876.

Less than one month after the BIA's decision in *Torres-Garcia*, we addressed the corresponding question with respect to inadmissibility under the one-year bar. In *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), *overruled by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), we relied on *Perez-Gonzalez* to hold that noncitizens inadmissible under the one-year bar were not precluded from seeking adjustment of status under § 1255(i). *Acosta*, 439 F.3d at 553–56. Our decision in

*Acosta* did not acknowledge the BIA's decision in *Torres-Garcia*.

Twenty-one months after our decision in *Acosta*, the BIA addressed whether noncitizens inadmissible under the one-year bar are prohibited from seeking adjustment of status under § 1255(i). Again, the BIA disagreed with us. In *In re Briones*, 24 I. & N. Dec. 355 (B.I.A. 2007), the BIA held that inadmissibility under the one-year bar prevents a noncitizen from obtaining adjustment of status under § 1255(i). *See Briones*, 24 I. & N. Dec. at 370.

When we next were presented with the questions from *Perez-Gonzales* and *Acosta*, we applied the Supreme Court's decision in *Brand X*[3] and deferred to the BIA's interpretations in *Torres-Garcia* and *Briones*, adopting them as our own. Thus, in *Gonzales*, we held that our decision in *Perez-Gonzales* was no longer valid in light of *Torres-Garcia*. *See Gonzales*, 508 F.3d at 1235–42. And in *Garfias-Rodriguez*, we overruled *Acosta* because of the BIA's decision in *Briones*. *See Garfias-Rodriguez*, 702 F.3d at 512–14.

## Retroactivity

Neither *Briones* nor our adoption in *Garfias-Rodriguez* of the BIA's interpretation from *Briones* ends the analysis

---

[3] *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

for petitioners, such as Acosta-Olivarria, who filed their applications for adjustment of status before the BIA decided *Briones*. In *Garfias-Rodriguez*, we held that to determine whether *Briones* applies retroactively to a particular applicant for adjustment of status, we apply the test set forth in *Montgomery Ward & Co., Inc. v. Federal Trade Commission*, 691 F.2d 1322 (9th Cir. 1982). *See Garfias-Rodriguez*, 702 F.3d at 517–18. *Montgomery Ward*'s five-factor balancing test requires that we consider:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Garfias-Rodriguez*, 702 F.3d at 518 (quoting *Montgomery Ward*, 691 F.2d at 1333). Because the test requires that a court look at an individual's own reliance, this retroactivity analysis is applied "on a case-by-case basis." *Id.* at 519; *see also id.* at 523 n.13 ("We express no opinion whether other applicants may avoid the retroactive effect of *Briones*.").

## III. Discussion

Applying the *Montgomery Ward* retroactivity analysis to Acosta-Olivarria's case,**[4]** we hold that the BIA's decision in *In re Briones*, 24 I. & N. Dec. 355 (B.I.A. 2007), does not apply retroactively to bar his application.

## The First Factor: Whether the Issue Is One of First Impression

As we recognized in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), the first factor was developed in the context of private-party litigation before the National Labor Relations Board ("NLRB") and is not well suited for immigration rulings. *See id.* at 520–21. In the NLRB context, this factor is meant to ensure that the party responsible for a change in law receives the benefits of the new rule. *Id.* at 520. In the immigration context, in which the government is always a party, this concern is less relevant. *Id.* at 521. Accordingly, this factor does not weigh in either direction for purposes of determining whether to apply the rule from *Briones* retroactively.

## The Second and Third Factors: Whether the New Rule Represents an Abrupt Departure and the Extent of the Petitioner's Reasonable Reliance on the Former Rule

The second and third *Montgomery Ward* factors are "closely intertwined." *Garfias-Rodriguez*, 702 F.3d at 521.

---

**[4]** Although the BIA did not rule on the retroactivity question, we may address it in the first instance. The parties have filed supplemental briefs on the issue, and the BIA has no special expertise regarding retroactivity. *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 514-15 (9th Cir. 2012) (en banc).

"If a new rule 'represents an abrupt departure from well established practice,' a party's reliance on the prior rule is likely to be reasonable, whereas if the rule 'merely attempts to fill a void in an unsettled area of law,' reliance is less likely to be reasonable." *Id.*

Acosta-Olivarria applied for adjustment of status in July 2006. At the time, our decision in *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), *overruled by Garfias-Rodriguez*, 702 F.3d 504, held that noncitizens in his position could apply to become lawful permanent residents, *see id.* at 556, and the BIA had not yet issued its contrary decision in *Briones*.

Acosta-Olivarria argues that he relied on our decision in *Acosta* in two ways. First, he filed his application for adjustment of status, along with the corresponding $1,000 fee, at a time when the law in our circuit allowed noncitizens to apply for adjustment of status under 8 U.S.C. § 1255(i) despite being inadmissible under the one-year bar (8 U.S.C. § 1182(a)(9)(C)(i)(I)). Indeed, in granting his request for adjustment of status, the IJ specifically relied on *Acosta* in holding that Acosta-Olivarria was eligible for relief under § 1255(i), despite being inadmissible under the one-year bar. Retroactive application of the rule from *Briones* would cause Acosta-Olivarria's application for adjustment of status to be denied, without any refund of the $1,000 fee. Second, Acosta-Olivarria gave up the opportunity to voluntarily depart the United States and start a ten-year clock after which he could have sought admission. Had he voluntarily departed in 2006 instead of staying and filing his application for adjustment of status,

Acosta-Olivarria would have been able to seek admission starting in 2016.**[5]**

The government does not contest that Acosta-Olivarria subjectively relied on *Acosta*. Rather, it contends that no one who applied for adjustment of status between our decision in *Acosta* and the BIA's decision in *Briones* could have reasonably relied on *Acosta* because the BIA's decision in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (B.I.A. 2006), held that inadmissibility under the removal-order bar precludes the noncitizen from applying for adjustment of status under § 1255(i). *See Torres-Garcia*, 23 I. & N. Dec. at 870–71, 876. In the government's view, *Torres-Garcia* should have enabled noncitizens such as Acosta-Olivarria to predict that *Acosta* would not survive.

We disagree. It was reasonable for Acosta-Olivarria to rely on our decision in *Acosta*. At the time he applied for adjustment of status, a published opinion of this court allowed noncitizens in his position to apply for adjustment of status despite being inadmissible, and there was no contrary BIA decision interpreting the one-year bar because *Briones* had not yet been decided. When we announce a legal rule, we do so not only for the benefit of courts, but also for the benefit of the general public. People within the Ninth Circuit should be able to rely on our opinions in making decisions. *See U.S. Bancorp Mortg. Co. v. Bonner*

---

**[5]** The inadmissibility bars in 8 U.S.C. § 1182(a)(9)(C)(i)(I) and (II) are subject to a relevant exception: if the noncitizen has been outside of the United States for more than ten years, he or she may apply for admission without being subject to the two bars. *See* § 1182(a)(9)(C)(ii).

*Mall P'ship*, 513 U.S. 18, 26 (1994) ("Judicial precedents are presumptively correct and valuable to the legal community as a whole.").

Consistent with this, we noted in *Garfias-Rodriguez* that reliance "might have been reasonable" if the petitioner had applied within the 21-month period between this court's decision in *Acosta* and the BIA's decision in *Briones*. *Garfias-Rodriguez*, 702 F.3d at 522. There, we rejected the petitioner's particular reliance argument because he had filed his application before *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), or *Acosta* had been decided. *See Garfias-Rodriguez*, 702 F.3d at 522. The petitioner in *Garfias-Rodriguez* could not have taken any actions in reliance on an earlier rule of law from our court because there was no such earlier rule. But that is not true of Acosta-Olivarria.

The dissent argues that the government is correct that Acosta-Olivarria could not have relied on *Acosta*, because the landscape of the law on this general issue was changing rapidly. In particular, *Perez-Gonzalez*, which held that inadmissibility under the removal-order bar did not preclude applications for adjustment of status, had been drawn into question by the BIA's decision in *Torres-Garcia* by the time Acosta-Olivarria filed his application. This argument, however, conflates the two bars to admissibility in § 1182(a)(9)(C)(i). *Perez-Gonzalez* and *Torres-Garcia* were about the effect of the removal-order bar. *See Perez-Gonzalez*, 379 F.3d at 792–95; *Torres-Garcia*, 23 I. & N. Dec. at 868. Acosta-Olivarria was inadmissible under the one-year bar. At the time he applied for adjustment of status, *Acosta* was the only decision in this jurisdiction on the interaction between the one-year bar and the relief he sought. The dissent argues that the two subsections of § 1182(a)(9)(C)(i) cannot be treated

differently. But this would be a reason for arguing that *Acosta* was wrongly decided in light of *Torres-Garcia* and *Brand X*, not a reason why reliance on *Acosta* would be unreasonable—particularly given that *Acosta* was decided after *Torres-Garcia* and *Brand X*. Our task here is not to grade our court's performance in deciding *Acosta*, but rather to decide whether it was reasonable for Acosta-Olivarria to rely on that decision.

We hold that it was reasonable for Acosta-Olivarria to rely on the law of this circuit deciding the precise legal question he faced, so the second and third *Montgomery Ward* factors weigh against applying *Briones* retroactively.

## The Fourth Factor: The Degree of the Burden That a Retroactive Order Imposes on a Party

The fourth *Montgomery Ward* factor cuts strongly against applying the rule from *Briones* retroactively because doing so would substantially burden Acosta-Olivarria. *See Garfias-Rodriguez*, 702 F.3d at 523 ("[D]eportation alone is a substantial burden that weighs against retroactive application of an agency adjudication."). Before the BIA applied *Briones*, the IJ had granted Acosta-Olivarria's application for adjustment of status and thus allowed him to remain in the United States with his family. If the *Briones* rule is applied retroactively, he will face deportation.

## The Fifth Factor: Interest in Applying the New Rule Consistently

We recognized in *Garfias-Rodriguez* that retroactive application of the rule from *Briones* helps ensure uniformity in the application of the immigration laws. But we emphasized that, because the new rule in *Briones* does not follow from the plain language of the statute, this factor

"only leans" in favor of retroactive application.  *Garfias-Rodriguez*, 702 F.3d at 523.

*          *          *

Weighing all the factors, we hold that *Briones* should not be applied retroactively in this case.  Acosta-Olivarria's reliance interests and the burden that retroactivity would impose on him outweigh the interest in uniform application of the immigration laws.

### IV. Conclusion

For the foregoing reasons, we **GRANT** the petition for review and **REMAND** with instructions to reinstate the IJ's 2006 order granting adjustment of status.

---

RICE, District Judge, dissenting:

I respectfully dissent.  On balance, the *Montgomery Ward* factors do not weigh in favor of departing from the general principles of retroactivity.  Applying *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007), the BIA properly found Acosta-Olivarria inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) and thus ineligible for adjustment of status under 8 U.S.C. § 1255(i).

As an initial matter, it is important to recognize "[t]he general rule. . . that an appellate court must apply the law in effect at the time it renders its decision."  *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969); *see also id.* at 282 (quoting Justice Marshall's explanation of the rule, delivered 150 years earlier in *United States v. Schooner Peggy*, 5 U.S. 103, 110 (1801)).  This rule "applies with equal force where the change is made by an administrative

agency acting pursuant to legislative authorization." *Id.* at 282. Only when application of a new rule would work a "manifest injustice" may the court withhold retrospective application. *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc) (quoting *Thorpe*, 393 U.S. at 282).

The D.C. Circuit's *Retail, Wholesale & Department Store Union v. NLRB*, 466 F.2d 380 (D.C. Cir 1972) decision, from which the Ninth Circuit adopted its *Montgomery Ward* analytical framework, "set forth a non-exhaustive list of five factors to assist courts in determining whether to grant *an exception to the general rule* permitting 'retroactive' application of a rule enunciated in an agency adjudication." *Clark-Cowlitz*, 826 F.2d at 1081 (emphasis added). Once again, that exception, according to the Supreme Court, is for "manifest injustice." *Thorpe*, 393 U.S. at 282. This non-exhaustive list of factors "boil[s] down . . . to a question of concerns grounded in notions of equity and fairness," *Clark-Cowlitz*, 826 F.2d at 1082 n.6, such that the general rule of retroactivity would apply unless its application would result in manifest injustice.

I contend the majority's balancing of the *Montgomery Ward* factors here is no longer tethered to the general rule applied for over 200 years. Rather, the majority's analysis—in which the factors are divorced from the general rule and allowed to become a framework in and of itself—loses sight of the guidance centuries of jurisprudence have offered. With this background, I will analyze the factors.

I agree with the majority's analysis of the first, fourth, and fifth *Montgomery Ward* factors. The first factor—whether the issue presents one of first impression—does not weigh in favor of either party as it is one "not . . . well

suited to the context of immigration law." *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 521 (9th Cir. 2012). In any event, any question of unfairness in applying a new rule, regardless of whether it is a case of first impression, "is fully captured in the second and third *Montgomery Ward* factors." *Id*. Similarly, I concede that the fourth factor—the degree of burden on the alien—favors Acosta-Olivarria, albeit not as strongly as the majority and past precedent so characterize.[1] *See id*. at 523. Finally, I agree that the fifth factor "points in favor" of the government. *See id*. "[N]on-retroactivity impairs the uniformity of a statutory scheme, and the importance of uniformity in immigration law is well established." *Id*.

I seriously depart from the majority, however, on the application of the second and third *Montgomery Ward* factors. I contend these factors weigh strongly in favor of retroactively applying *Briones*: Because *Briones* was not an abrupt departure from any "well established practice," any reliance Acosta-Olivarria may have had on the Ninth Circuit's reasoning in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), or *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), cannot be considered reasonable. To the

---

[1] The Immigration Judge, under the old rule, had granted Acosta-Olivarria's application for adjustment of status and thus allowed him to remain in the United States with his family; conversely, upholding the BIA's retroactive application of *Briones* would cause him to face certain deportation. But deportation has always been the consequence at the heart of Acosta-Olivarria's proceedings. Our system of justice does not allow an initial wrong decision to dictate the final result, especially when that decision is subject to timely review by a higher authority, as was the case here.

contrary, the BIA's decision in *Briones* should have come as no surprise in light of the BIA's previous rejection of the Circuit's interpretation of the statutory scheme, which rejection it announced in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), prior to Acosta-Olivarria's July 2006 application.

The second and third *Montgomery Ward* factors are most appropriately analyzed together. The second factor analyzes whether a rule is an "abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law." *Garfias-Rodriguez*, 702 F.3d at 518 (quoting *Montgomery Ward & Co. Inc. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982)). The third factor, focusing on the alien's reliance, is "closely intertwined" with this analysis: "If a new rule represents an abrupt departure from well established practice, a party's reliance on the prior rule is likely to be reasonable, whereas if the rule merely attempts to fill a void in an unsettled area of law, reliance is less likely to be reasonable." *Id*. at 521 (internal quotation marks omitted)). As the *Garfias-Rodriguez* court properly noted, "these two factors will favor retroactivity if a party could reasonably have anticipated the change in the law such that the new requirement would not be a complete surprise." *Id*. (internal quotation marks omitted); see *Clark-Cowlitz*, 826 F.2d at 1082–83 ("The second factor requires the court to gauge the unexpectedness of a rule and the extent to which the new principle serves the important but workaday function of filling in the interstices of the law."). The D.C. Circuit offers the following guidance to courts conducting this analysis:

> From our experience in applying the [retroactivity analysis], there has emerged a basic distinction between (1) new applications of law, clarifications, and

additions, and (2) substitution of new law for old law that was reasonably clear. In the latter situation, which may give rise to questions of fairness, it may be necessary to deny retroactive effect to a rule announced in an agency adjudication in order to protect the settled expectations of those who had relied on the preexisting rule. By contrast, retroactivity in the former case is natural, normal, and necessary, a corollary of an agency's authority to develop policy through case-by-case adjudication rather than rulemaking.

*Williams Nat. Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993) (alterations, citations, and internal quotation marks omitted).

Importantly—and contrary to the majority's protestations—the retroactivity analysis does not treat mere *precedent* and *well-established practice* alike.

When Acosta-Olivarria applied for adjustment of status, there was no settled practice upon which he could reasonably rely. The Ninth Circuit's pre-*Briones* opinions hardly constitute a well established practice, especially in light of the tension created by the BIA's contrary view. True, the Circuit's opinion in *Acosta* affirmed its previous reasoning in *Perez-Gonzalez*, but the BIA's decision in *Torres-Garcia* cannot be discounted. Given the unsettled tension between the BIA and this Circuit at the time of Acosta-Olivarria's application, as well as the resulting

confusion from the two unreconcilable decisions,[62] *Briones* cannot be called an abrupt break from any well established practice. *See Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1195 (D.C. Cir. 1984) ("Given the confusion in the Board's and courts' decisions over the years, the new rule cannot be called an abrupt break with a well-settled policy."). As such, Acosta-Olivarria's reliance on contrary Ninth Circuit decisions was not reasonable.

The majority primarily faults me for conflating the two bars to admissibility. True, the Circuit's opinion in *Perez-Gonzalez* and the BIA's contrary decision in *Torres-Garcia* addressed the tension between eligibility for status adjustment under a different bar to admissibility—subsection II, rather than subsection I of 8 U.S.C. § 1182(a)(9)(C)(i). However, as companion provisions, both subsections present the same conflict, *see Garfias-Rodriguez*, 702 F.3d at 509 n.4, and thus their similar treatment should have come as no surprise, *see id.* at 530 (Kozinski, J., dissenting) ("No one should have been surprised by the interpretation announced in *Briones*. It was clearly foreshadowed by the BIA's earlier ruling in *In re Torres-Garcia*, which predated *Acosta* by a month . . . ." (citation omitted)). And as the Circuit emphasized in *Acosta* when concluding that *Perez-Gonzalez* controlled, "any attempt to distinguish the present case from *Perez-*

---

[2] The *Acosta* court did not distinguish—let alone mention—the BIA's decision in *Torres-Garcia*, which had been issued one month before *Acosta*.

*Gonzalez* based on the different grounds of inadmissability involved would be unpersuasive." *Acosta*, 439 F.3d at 554.

In reaching its conclusion that Acosta-Olivarria's reliance was reasonable, the majority overstates the effect of the dicta in *Garfias-Rodriguez* regarding the reasonableness of reliance during the 21-month period between the Circuit's opinion in *Acosta* and the BIA's decision in *Briones*. Although the en banc court noted that reliance during this period "might" have been reasonable—perhaps in an attempt to further highlight the unreasonableness of Garfias-Rodriguez's reliance—the opinion far from binds this Court to a holding that such reliance during this 21-month window is, as a blanket rule, reasonable. *See Garfias-Rodriguez*, 702 F.3d at 522. Rather, any discussion of the reasonableness of reliance during this period was quickly tempered by the following:

> From the outset, the tension between § 212(a)(9)(c) and § 245(i) was obvious. That ambiguity in the law—which resulted in a six-year dialogue between the BIA and us—should have given Garfias no assurances of his eligibility for adjustment of status. Garfias might have had reason to be encouraged after our generous reading of the statute in *Perez-Gonzalez* and *Acosta*, but, even then, any reliance he placed on our decisions held some risk because our decisions were subject to revision by the BIA under *Chevron* and *Brand X*.

*Id.* at 522–23; *see also Carrillo de Palacios v. Holder*, 708 F.3d 1066, 1072 (9th Cir. 2013) (similarly holding that the tension between the two provisions was "obvious" and

that the ambiguity in the law should have given an alien "no assurances").

Because the BIA's opinion in *Briones* cannot justifiably be characterized as an abrupt break from any well established practice but rather should have been no surprise, the reasonableness of Acosta-Olivarria's reliance is greatly diminished. The extent of Acosta-Olivarria's reliance—a $1,000 application fee incurred after removal proceedings had already commenced and years beneficially spent in the United States when he hypothetically could have voluntarily departed and started the ten-year readmission clock under 8 U.S.C. § 1182(a)(9)(C)(ii)—is insufficient to outweigh this conclusion.

In light of the foregoing, no manifest injustice has been shown here. The more equitable and fair approach would be to treat Acosta-Olivarria like all other aliens who are ineligible for adjustment under *Briones*. Retroactivity is the general rule and has been for over 200 years. An exception is not warranted in the case of Acosta-Olivarria. Accordingly, I would not disturb the BIA's decision.